IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CT-3269-FL

| | | |
|---|---|---|
| WILLIAM C. CARAWAN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GEORGE SOLOMON, BRAD PERRITT, | ) | |
| GEORGE W. BAYSDEN, JR., MARCUS | ) | |
| HOVIS, and OFFICER NORRIS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, (DE 75). Plaintiff responded in opposition and in this posture the issues raised are ripe for ruling. For the reasons that follow, the court grants the motion.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on October 17, 2016, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants George Solomon ("Solomon"), Brad Perritt ("Perritt"), George Baysden ("Baysden"), and Marcus Hovis ("Hovis") violated his rights under the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq., by preventing him from attending certain Islamic religious services. As relief, plaintiff seeks a declaratory judgment, compensatory and punitive damages, and permanent injunction directing defendants to allow inmates to attend the religious services of their choice and to appoint an Islamic mediator to address

religious disputes.

On July 11, 2017, the court conducted its frivolity review of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e), and allowed the action to proceed. Defendants filed answer on December 28, 2017, denying plaintiff's allegations and asserting various affirmative defenses. On January 2, 2018, the court entered case management order governing discovery and dispositive motions practice. On February 5, 2018, plaintiff filed motions to amend the complaint and join new defendant. Plaintiff's proposed amended complaint alleged that defendant officer Norris ("Norris"), a correctional officer with the Tabor Correctional Institution ("Tabor C.I."), also prevented him from attending Islamic worship services. On April 6, 2018, the court granted the motions to amend and join defendant.

On May 2, 2018, the court appointed North Carolina Prisoner Legal Services, Inc. ("NCPLS") to assist plaintiff with conducting discovery in this action. The parties completed discovery on or about February 12, 2019. That same day, NCPLS withdrew from its limited appointment as counsel for plaintiff pursuant to Standing Order 17-SO-3.

On March 11, 2019, defendants filed the instant motion for summary judgment, arguing plaintiff's claims should be dismissed because he failed to exhaust available administrative remedies prior to filing this action. In support, defendants rely upon memorandum of law, statement of material facts, affidavit of defendant Perritt, and administrative grievance records.

Plaintiff responded in opposition on June 17, 2019, relying upon memorandum of law, plaintiff's affidavit, statement of material facts, and the following: 1) plaintiff's inmate request forms requesting permission to attend Islamic worship services and participate in educational classes; 2) Tabor C.I. approval for plaintiff to attend Islamic worship services; 3) defendant

Baysden's response to plaintiff's requests to attend Islamic worship services; 4) plaintiff's administrative grievances; 5) correspondence between plaintiff and Tabor C.I. officials concerning his grievances; 6) documentation regarding plaintiff's educational classes; 7) defendants' discovery responses; 8) Tabor C.I. menu accommodation form; and 9) plaintiff's motion to amend the complaint in this action and a March 18, 2019, order in Carawan v. Solomon, No. 5:16-CT-3226-FL. Defendants filed reply in further support of the motion for summary judgment on July 19, 2019, supported by affidavit of Kimberly Grande, the executive director of the North Carolina Department of Public Safety's ("DPS") Inmate Grievance Resolution Board, DPS's administrative remedy procedure, and additional grievance records.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S.

3

242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.   Analysis

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

4

prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and the court therefore may not excuse failure to exhaust, even to take special circumstances into account. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016); Woodford v. Ngo, 548 U.S. 81, 83-85 (2006). Administrative grievances must contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]." Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)); Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008).

The only exception to mandatory exhaustion is when the administrative remedy procedure is unavailable to the inmate. See 42 U.S.C. § 1997e(a); Ross, 136 S. Ct. at 1858-60. An administrative remedy process is unavailable if: 1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1858-60.

DPS has a three-step administrative remedy procedure which inmates must complete in order to exhaust administrative remedies. (Grande Aff. (DE 96-1) ¶ 4); see also Moore, 517 F.3d at 721. DPS's Administrative Remedy Procedure ("ARP") first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. (ARP (DE 96-1) § .0301(a)). If informal resolution is unsuccessful, the ARP provides that any inmate in DPS custody may submit a written grievance on Form DC-410. (Id. § .0310(a)). If the inmate is not satisfied with the decision reached at the step one level of the grievance process,

5

he may request relief from the facility head. (Id. § .0310(b)(1)). If the inmate is not satisfied with the decision reached by the facility head, he may appeal his grievance to the Secretary of Public Safety through the inmate grievance examiner. (Id. § .0310(c)(1)). The decision by the inmate grievance examiner or a modification by the Secretary of Public Safety shall constitute the final step of the ARP. (Id. § .0310(c)(6)).

Plaintiff does not contest that he failed to exhaust administrative remedies before filing his original complaint in this action. (See Pl.'s Aff. (DE 89) ¶ 3). Plaintiff argues that the DPS administrative remedy procedure was unavailable to him where his grievance was rejected because plaintiff had another active grievance pending at the time. (See id. ¶ 15). DPS's rule that plaintiff may only pursue one administrative grievance at a time does not render the procedure unavailable under the standard set forth above. The rule does not make the administrative remedy procedure operate as a dead end, render it exceedingly opaque, or provide an avenue for prison officials to thwart inmates from taking advantage of the grievance process. See Ross, 136 S. Ct. at 1860; Moore, 517 F.3d at 729-30 (concluding plaintiff failed to exhaust administrative remedies where prison officials rejected grievance based on rule that only one grievance can be pending at a time); see also Turner v. Clelland, No. 1:15-CV-947, 2016 WL 6997500, at *11 (M.D.N.C. Nov. 30, 2016). Accordingly, plaintiff's argument that DPS's administrative remedy procedure was unavailable is without merit.

Plaintiff also argues he exhausted all administrative remedies before filing the amended complaint. The exhaustion timeline may be adjusted when an inmate brings a supplemental claim under Federal Rule of Civil Procedure 15(d). Rule 15(d) permits litigants to file supplemental pleadings addressing claims that arise after the original complaint was filed. See Fed. R. Civ. P.

15(d). Although the United States Court of Appeals for the Fourth Circuit has not addressed the issue, courts generally have held that supplemental claims can be exhausted during the pendency of the underlying litigation, provided the inmate exhausts all administrative remedies before filing the supplemental complaint. See, e.g., Jackson v. Fong, 870 F.3d 928, 934-35 (9th Cir. 2017); Mattox v. Edelman, 851 F.3d 583, 591-92 (6th Cir. 2017) (permitting inmate to exhaust administrative remedies for supplemental claims during the pendency of the underlying litigation only in the event that one of the claims in the original complaint was fully exhausted).

Plaintiff's amended complaint, however, is not a supplemental pleading. The amended complaint alleges effectively the same claims as the original complaint, and only adds a new defendant to the action. Furthermore, the amended complaint alleges that defendant Norris denied plaintiff's requests to attend religious services beginning on September 23, 2016, the same date plaintiff alleged the violations began occurring in the original complaint. (Compare Compl. (DE 1) ¶ V with Am. Compl. (DE 36) at 3).[1] Accordingly, plaintiff's amended complaint did not bring new claims arising after he filed the original complaint, and thus the fact that plaintiff may have exhausted administrative remedies before filing the amended complaint cannot defeat defendants' exhaustion defense. See Fed. R. Civ. P. 15(d); Mattox, 851 F.3d at 591-93 (permitting inmate to exhaust administrative remedies while litigation was pending only in the event that the claim arose after plaintiff filed the original complaint); Rhodes v. Robinson, 621 F.3d 1002, 1006 (9th Cir. 2010).

Finally, plaintiff asserts DPS officials should have treated his rejected grievance as an

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document

emergency grievance, which under DPS policy is not subject to the rule that inmates may only pursue one grievance at a time. (See ARP (DE 96-1) § .0308). Plaintiff, however, did not indicate on the grievance that it was an emergency, and nothing on the face of the grievance itself suggests it needed emergency treatment. (See DE 1-1).

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion for summary judgment, (DE 75). Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of March, 2020.

LOUISE W. FLANAGAN
United States District Judge